September 22, 2022

**VIA CM/ECF**
Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:** ***Trireme Energy Holdings, Inc. et al. v. RWE Renewables Americas, LLC et al.*, No. 1:22-cv-07439-NRB: Request for Pre-Motion Conference to Dismiss**

Dear Judge Buchwald:

We represent the Defendants RWE Renewables Americas, LLC and RWE Renewables Services, LLC (together, "RWE" or "Defendants") in the above-captioned matter. We write pursuant to Your Honor's Individual Rule 2.B to request a pre-motion conference regarding Defendants' anticipated motion to dismiss Plaintiffs Trireme Energy Holdings, Inc. and Trireme Energy Development, LLC's (together, "Plaintiffs" or "Trireme") Complaint (ECF No. 1), in its entirety, under Fed. R. Civ. P. 12(b)(6).

There are two reasons why the Complaint must be dismissed: ***First***, Plaintiffs' sole claim for breach of contract is barred by the rule against "claim splitting" and the unbroken line of Second Circuit authority holding that all accrued claims for breach of a single contract must be brought in a single action. ***Second***, even if the claim did not constitute impermissible claim splitting, it fails as a matter of law. Indeed, Plaintiffs' attempt to manufacture a breach does violence to the parties' intentions, contravenes common sense, and lacks any support in the applicable case law.[1]

**Background:** In 2017, Plaintiffs sold a portfolio of wind farms to Defendants. ¶ 1.[2] The terms and conditions of that sale were memorialized in an agreement between the parties (the "Merger Agreement" or "MA").[3] ¶ 2. Defendants paid substantial consideration for the wind farm projects: (a) Defendants made a $50 million upfront payment; and (b) Defendants agreed to make further conditional "milestone payments" – potentially totaling up to $112 million (on top of the initial $50 million) – ***if*** projects within the portfolio met certain defined development targets and/or became commercially operational by an agreed upon deadline. ¶ 1. The Merger Agreement gave Defendants "***sole discretion***" to determine whether and/or when to develop the projects, but also provided Plaintiffs with protection against Defendants flipping a project to a third party for a profit and avoiding having to make a milestone payment back to Plaintiffs.

---

[1] Given space limitations, Defendants cannot (and have not tried to) assert every argument here that justifies dismissal of Plaintiffs' Complaint. For present purposes, Defendants submit that additional canons of contract interpretation and other applicable case law provide further reasons why Plaintiffs have failed to state a claim.

[2] Citations to "¶ __" are to the Plaintiffs' Complaint herein (ECF No. 1) and are assumed to be true for the purposes of this letter-motion only.

[3] The contracting party to the Merger Agreement on Defendants' side was Innogy Renewables US LLC ("IRUS"), predecessor by merger to Defendant RWE Renewables Services, LLC. Plaintiffs allege that RWE "stands in IRUS's shoes for purposes of the contract claim asserted in this action." ¶ 12.

Thus, Plaintiffs retained a right to approve or veto any plan by Defendants to "***sell***[,] assign, transfer or ***otherwise dispose of***" any project or the assets of any project (MA § 7.6(c) (emphasis added)).[4] ¶¶ 2, 28. If Defendants did sell or dispose of any project *without* first obtaining Plaintiffs' consent, then Defendants would owe Plaintiffs the milestone payment associated with such project. ¶¶ 1-2.

Starting in 2018 and concluding in July 2020, two of Europe's largest utility companies – RWE AG and E.ON – conducted a highly complex "asset swap." ¶¶ 3-4. As part of that swap, RWE AG (the current parent of the two Defendants) acquired IRUS (Defendants' predecessor) and assumed IRUS's obligations under the Merger Agreement. ¶ 4. ***Nothing*** in the Merger Agreement prohibits IRUS from being acquired by RWE AG – that transaction did not implicate the Merger Agreement, and Plaintiffs do not claim otherwise. Following RWE AG's acquisition of IRUS, RWE AG *internally* reorganized itself, including by moving the assets of its acquired subsidiary IRUS to another wholly owned subsidiary, RWE Renewables Services, LLC (one of the Defendants), and then ultimately dissolving IRUS. ¶¶ 11-12. As a consequence, RWE Renewables Services became the owner of the at-issue wind farm projects and their assets. *Id.*

Here, Plaintiffs allege that *this internal reorganization* – in which RWE AG replaced its old wholly owned subsidiary, IRUS, with its new wholly owned subsidiary, RWE Renewables Services – somehow amounts to a breach of § 7.6(c)'s prohibition on *selling*, assigning, transferring or *otherwise disposing of* the wind farm projects. Plaintiffs seek payment from Defendants for the full amount of the conditional milestone payments—a whopping $112 million—solely on the basis of this allegedly impermissible internal reorganization.

Moreover, this is not the first time Plaintiffs have sued Defendants for allegedly breaching the Merger Agreement, or even for failure to make a conditional milestone payment. In fact, for over two years, the parties have been actively litigating Plaintiffs' claims for breach of the very same Agreement in an action pending before Judge Caproni (the "First Action"), and the relief Plaintiffs seek there—an award of $69.7 million for a conditional milestone payment associated with the Cassadaga wind project—is fully encompassed within what they seek here.[5]

**Plaintiffs' Sole Claim is Precluded by the Rule Against Claim-Splitting:** It is well established that where "a party sues for a breach of contract," the rule against claim splitting "will preclude the party's subsequent suit for any claim of breach that had occurred *prior* to the first suit." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 501 (2d Cir. 2014) (emphasis in original; citation omitted); *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 111 (2d Cir. 2000); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996); *Prime Mgmt. Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir. 1990); *Mahmood v. Rsch. in Motion Ltd.*, 905 F. Supp. 2d

[4] While Plaintiffs [mis]quote the Merger Agreement in their Complaint, they did not attach it as an exhibit. Defendants therefore submit a true and correct copy of the Merger Agreement as **Exhibit 1** hereto.

[5] *Trireme Energy Holdings, Inc. et al. v. Innogy Renewables US LLC et al.*, No. 1:20-cv-05015-VEC-BCM (S.D.N.Y. filed June 30, 2020).

498, 502 (S.D.N.Y. 2012), *aff'd*, 515 F. App'x 891 (Fed. Cir. 2013); *Manbeck v. Micka*, 640 F. Supp. 2d 351, 364-65 (S.D.N.Y. 2009) (confirming that preclusive effect in new action applies to "all claims that could have been asserted in the prior consolidated action based on facts existing as of the date the last operative complaints were filed").

That is precisely the case here – the "breach" underlying Plaintiffs' claim occurred on July 1, 2020, ¶ 36, more than six months prior to the date Plaintiffs filed their operative complaint in the First Action, which occurred on January 13, 202**1**. As such, the new claim could only have been asserted in the First Action. Plaintiffs' failure to timely do so bars them from commencing a separate action to assert that claim here, as made perfectly clear by the voluminous authority cited directly above. *See also Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 564 (S.D.N.Y.) (barring contract claims where "[p]laintiff *could* have raised these contract claims in the state court since the underlying contract pre-dated that suit [but] [f]or whatever reason he did not[.]") (emphasis in original)[6], *aff'd*, 657 F. App'x 949 (Fed. Cir. 2016).

**Plaintiffs Fail to State a Plausible Claim for Breach:** Under New York law, "contract interpretation is an exercise in 'common sense' rather than 'formalistic literalism,'" thus "words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby." *RCJV Holdings, Inc. v. Collado Ryerson, S.A. de C.V.*, 18 F. Supp. 3d 534, 545 (S.D.N.Y. 2014) (quoting *Duane Reade, Inc. v. Cardtronics, LP*, 54 A.D.3d 137, 143-44 (1st Dep't 2008)).

Looking to the intention of the Parties and the functioning of the Merger Agreement as a whole, the apparent and obvious purpose of § 7.6(c)'s grant of veto power over sales and other dispositions of the at-issue assets is to provide protection against Defendants off-loading a project to a third party for a profit while avoiding any milestone payment obligation to Plaintiffs. That purpose is evident from the words themselves (*i.e.*, concerning *sales* and *disposals*) as well as the general structure of the Agreement in which Defendants are given broad discretion to develop and construct the projects and Plaintiffs (having received valuable consideration) are largely passive observers. Plaintiffs' interpretation of the contract, by contrast, stretches the Agreement beyond recognition. Indeed, Plaintiffs argue that although they have *no right* to veto the outright *sale* of their former merger partner, IRUS, to RWE, they have a $112 million right to veto an internal reorganization. Nothing about the structure of the Agreement or the respective rights and obligations of the parties thereunder supports such an expansive and unfettered veto right over RWE's internal corporate structure. Plaintiffs' attempt to invent a breach where none exists should thus be rejected.

[6] That Plaintiffs belatedly sought to amend their operative complaint in the First Action and assert this claim there, before being denied leave to do so by Judge Caproni, does not provide an exception to the rule against claim splitting. "If plaintiffs had timely raised those allegations, they would have been heard in [the Prior Action]. By filing them in a second action, plaintiffs attempted to avoid the consequences of their delay." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139-41 (2d Cir. 2000).

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*s/ Susan K. Leader*

Susan K. Leader
(*pro hac vice* application submitted)
1900 Avenue of the Stars, 28th Floor
Los Angeles, California 90067
Telephone: (323) 210-2999
Facsimile: (866) 974-7329
Email: sleader@wsgr.com

Eli B. Richlin
Paul C. Gross
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: erichlin@wsgr.com
Email: pgross@wsgr.com

*Counsel for Defendants RWE Renewables Americas, LLC and RWE Renewables Services, LLC*

cc: All Counsel of Record (via CM/ECF)