UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRIREME ENERGY HOLDINGS, INC. and
TRIREME ENERGY DEVELOPMENT, LLC,

                Plaintiffs,

-against-

RWE RENEWABLES AMERICAS, LLC, and RWE
RENEWABLES SERVICES LLC,

                Defendants.

Case No. 1:22-cv-07439 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

      On November 20, 2024, following a five-day bench trial, the Court entered judgment in this case in favor of Defendants RWE Renewables Americas, LLC ("RWE US") and RWE Renewables Services LLC ("RES," and, together with RWE US, "RWE" or "Defendants"). *See generally Trireme Energy Holdings, Inc. v. RWE Renewables Ams., LLC* (*Trireme II*), 757 F. Supp. 3d 445 (S.D.N.Y. 2024); Dkt. 170. Now before the Court is RWE's motion for sanctions pursuant to Federal Rule of Civil Procedure ("Rule") 11 against Plaintiffs Trireme Energy Holdings, Inc., and Trireme Energy Development, LLC (collectively, "Trireme" or "Plaintiffs"). Dkt. 173; Dkt. 174 ("Br."). For the reasons set forth below, RWE's motion for sanctions is DENIED.

BACKGROUND

      The Court assumes the parties' general familiarity with the allegations in this case and the procedural history, as recounted in *Trireme II*, and discusses only those details necessary to explain its decision here.

      In 2017, Trireme and RWE's predecessor in interest, Innogy Renewables US LLC ("IRUS"), entered into a merger agreement whereby IRUS acquired Trireme's portfolio of

development-stage renewable-energy projects (the "Development Companies").  *See Trireme II*, 757 F. Supp. 3d at 453.  On June 30, 2020, Trireme commenced litigation against IRUS seeking earnout payments allegedly owed to Trireme under the parties' merger agreement. *See Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC* (*Trireme I*), 706 F. Supp. 3d 409, 415 (S.D.N.Y. 2023), *aff'd*, No. 24-159, 2025 WL 1374732 (2d Cir. May 13, 2025) (summary order).

On March 25, 2022, during the pendency of *Trireme I*, Trireme's counsel wrote to IRUS to provide notice of a material breach of Section 7.6(c) of the parties' merger agreement and to demand payment that Trireme claimed it was owed because of that breach.  Dkt. 175-1 at 2.  Section 7.6(c) restricts IRUS's ability to "sell[,] assign, transfer[,] or otherwise dispose of" its interests in the Development Companies unless it received Trireme's consent or made the associated milestone payment.  Dkt. 36 ("SAC") ¶ 28 (first alteration in original). Trireme's letter asserted that, based on information that IRUS had produced in *Trireme I*, Trireme "ha[d] learned that, prior to December 31, 2021, IRUS assigned, transferred, or otherwise disposed of" equity interests for all the Development Companies for which milestone payments were still outstanding.  Dkt. 175-1 at 2.  Trireme alleged that "IRUS actively concealed these transfers from Trireme and falsely represented that no such transfers or dispositions had or would occur," thereby preventing Trireme from "learn[ing] of IRUS's breach of section 7.6(c) until long after filing and amending its complaint in [*Trireme I*]." Dkt. 175-1 at 3.

RWE declined Trireme's payment demand, and on April 8, 2022, Trireme moved for leave to amend its complaint in *Trireme I* to assert a claim for breach of Section 7.6(c).  *See* Motion to Amend/Correct Complaint, *Trireme I*, 706 F. Supp. 3d 409 (No. 20-cv-05015), ECF No. 148; Memorandum of Law in Support of Plaintiff's Motion for Leave to File

Amended Complaint, *Trireme I*, 706 F. Supp. 3d 409 (No. 20-cv-05015), ECF No. 149. Judge Caproni denied leave to amend, finding that Trireme had "not shown good cause to modify the scheduling order under Rule 16," including because "plaintiffs were on notice of a potential breach before this case was even filed," and at least "earlier in the discovery period, as soon as defendants submitted organizational charts and documents in April of 2020 and July of 2021 showing that the [D]evelopment [C]ompanies were outside of their control, and certainly by September 2021 when a witness testified that the [D]evelopment [C]ompanies were outside of IRUS' control." Transcript of Oral Argument at 40:3-19, *Trireme I*, 706 F. Supp. 3d 409 (No. 20-cv-05015), ECF No. 168.

Trireme commenced the present action shortly thereafter on August 31, 2022, asserting a single claim for breach of contract arising from Section 7.6(c) of the merger agreement. *See generally* Dkt. 1. Specifically, Trireme alleged that RWE's internal reorganization of the Development Companies following an asset swap between two large German utilities (the "Asset Swap") violated Section 7.6(c). Dkt. 1 ¶¶ 2-7. Trireme filed an Amended Complaint on October 4, 2022, which included allegations that IRUS had concealed its internal reorganization of the Development Companies. Dkt. 21 ("AC") ¶¶ 7, 42-56. The Amended Complaint alleged that "[p]rior to late 2020, Trireme could not have discovered the existence of [i]mproper [t]ransfers through due diligence because the transfers were not recorded in publicly available information," the "[i]mproper [t]ransfers were only recorded in RWE's internal records," and RWE "never voluntarily disclosed the [i]mproper [t]ransfers to Trireme." AC ¶ 43. Trireme further alleged that "IRUS and RWE provided materially misleading information to Trireme about the [i]mproper [t]ransfers," AC ¶ 44, including in a September 2018 meeting between IRUS's CEO, Andrew Young, and Trireme's CEO, James Spencer, and in an April 22, 2020 email appending an organizational chart, AC ¶¶ 45-53.

3

On October 27, 2022, RWE moved to dismiss Trireme's Amended Complaint pursuant to Rule 12(b)(6).  *See* Dkt. 31.  On August 24, 2023, this Court denied RWE's motion to dismiss, finding that Trireme had sufficiently pleaded concealment allegations such that it was "at least plausible that [IRUS] concealed information from [Trireme] and [Trireme] could not have discovered the information with reasonable diligence before the filing of the operative complaint in *Trireme I*."  *Trireme Energy Dev., LLC v. RWE Renewables Ams., LLC*, No. 22-cv-07439 (JLR), 2023 WL 5469662, at *11 (S.D.N.Y. Aug. 24, 2023).  The Court likewise denied Defendants' motion for reconsideration based on a Delaware merger certificate, finding that, "without a more fulsome record," that certificate "would not put plaintiffs on notice of fact[s] sufficient to state their claim."  Dkt. 91 at 11:9-15.

On January 16, 2024, the Court denied Trireme's motion for partial judgment on the pleadings, and, while granting RWE's request to file a motion for summary judgment, noted that it seemed that there were a "lot of fact issues."  Dkt. 104 at 56:13-18.  RWE did not file a motion for summary judgment.  The Court subsequently held a bench trial from October 7 through October 11, 2024, in part because "fact issues that were relevant to a determination of fraudulent concealment and other aspects of claim splitting, and now *res judicata*, were intertwined with facts related to the merits of the action."  *Trireme II*, 757 F. Supp. 3d at 479. On November 19, 2024, the Court granted judgment in favor of RWE, holding that Trireme's breach of contract claim was barred by *res judicata* and, in the alternative, that it failed on the merits.  *See generally id.*  On January 6, 2025, RWE filed the present motion for sanctions. *See* Br.  On February 3, 2025, Trireme filed its opposition to the motion for sanctions, Dkt. 182 ("Opp."), and on February 18, 2025, RWE filed its reply, Dkt. 189 ("Reply").[1]

---

[1] On February 3, 2025, Trireme also filed a letter-motion to seal Exhibit 3 to the concurrently filed declaration of Mark A. Kirsch and to redact quotations from that exhibit that appear in

4

**LEGAL STANDARD**

As relevant here:

> Rule 11(b) provides that, "by presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

*Galin v. Hamada*, 283 F. Supp. 3d 189, 200-01 (S.D.N.Y. 2017) (alteration adopted) (omissions in original) (quoting Fed. R. Civ. P. 11(b)(2)-(3)), *aff'd*, 753 F. App'x 3 (2d Cir. 2018) (summary order). The Court may award sanctions against a party if the party has "violated Rule 11(b) by making 'false, misleading, improper, or frivolous representations to the court.'" *Mason Agency Ltd. v. Eastwind Hellas SA*, No. 09-cv-06474 (DLC), 2009 WL 3787261, at *2 (S.D.N.Y. Nov. 11, 2009) (quoting *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008)). The bar for Rule 11 sanctions is a demanding one: factual assertions do not rise to the level of being sanctionable unless they are "utterly lacking in support." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996); *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) ("With respect to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'" (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003))).

---

Trireme's concurrently filed opposition to RWE's motion for sanctions pursuant to Rule 11. Dkt. 181. Exhibit 3 is a confidential settlement communication between the parties. Defendants do not object to the request to seal. Dkt. 181 at 1. Although the "public has a common law presumptive right of access to judicial documents," "there is no established presumption of access" to "settlement documents that were entered into on a confidential basis between the parties and were not themselves part of the court record." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004). Moreover, the Court does not rely on the settlement communication in rendering this opinion. The Court therefore grants Plaintiffs' request to seal the settlement communication at Exhibit 3 and to redact quotations from that communication in their opposition to Defendants' motion for Rule 11 sanctions. Trireme shall refile its opposition, Dkt. 182, with appropriate redactions.

Indeed, the Rule 11 standard is "purposefully high," so sanctions will only be levied in "extraordinary circumstances." *Galin,* 283 F. Supp. 3d at 201 (quoting *Park v. Seoul Broad. Sys. Co.*, No. 05-cv-08956 (BSJ) (DFE), 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008)). Levying sanctions under Rule 11 is squarely within the Court's discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400 (1990); *Perez v. Posse Comitatus*, 373 F.3d 321, 325-26 (2d Cir. 2004) (first citing *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166, 177 (2d Cir. 1999); and then citing Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment). There is no requirement that a court issue sanctions against a party, even in the event of Rule 11(b) violations. *See Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012). Hindsight should not affect the Court's determination of whether a party acted with objective unreasonableness. *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011-12 (2d Cir. 1986). Moreover, the Court affords a degree of deference to the nonmovant. *See Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986).

## DISCUSSION

RWE brings this Rule 11 motion, contending that "Trireme improperly prolonged this litigation by making allegations without a good faith basis to do so, and then persisting in pressing those allegations even after they were clearly disproven." Br. at 1. Specifically, RWE takes issue with Trireme's allegations throughout this litigation that (i) RWE concealed from Trireme the internal reorganization that was the subject of the case, and (ii) Trireme could not have discovered the existence of the reorganization through due diligence. *Id.* at 2. According to RWE, "these allegations lacked support when they were made by Trireme and were decisively disproven in documents provided to Trireme in discovery." *Id.* Accordingly, RWE asserts that it is entitled to the attorney's fees incurred by RWE in taking this action to trial. *Id.* at 4.

RWE's motion, however, misconstrues the standard for Rule 11 sanctions. As Trireme argues, "[t]he key question is whether" Trireme's concealment allegations "were '*utterly* lacking in support,' not whether they were ultimately disproven." Opp. at 1 (internal quotation marks omitted) (quoting *Storey*, 347 F.3d at 390). RWE cannot satisfy that exacting standard. To the contrary, this case proceeded to a bench trial precisely because "fact issues that were relevant to a determination of fraudulent concealment and . . . *res judicata*[] were intertwined with facts related to the merits of the action." *Trireme II*, 757 F. Supp. 3d at 479.

RWE is correct that the application of *res judicata* was a case-dispositive, threshold issue in this action. However, when plaintiffs uncover newly discovered evidence that was "either fraudulently concealed or . . . could not have been discovered with due diligence," *res judicata* does not apply. *Id.* (quoting *Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 (2d Cir. 2021)). And there were genuine factual issues as to the applicability of both the fraudulent concealment and nondiscoverability exceptions in this case. With respect to fraudulent concealment, Trireme's claim rested on two pieces of evidence: (1) Mr. Young's purported verbal assurances to Mr. Spencer that the ownership of the Development Companies would remain the same; and (2) an organizational chart that IRUS circulated to Trireme on April 22, 2020, in response to a request for information from Trireme. *Id.* at 484. As of the time of trial, there were factual disputes concerning both. Spencer's and Young's dueling accounts of their September 2018 Starbucks meeting effectively presented a credibility issue. Only after receiving Spencer's and Young's testimony at trial did the Court conclude that the "more plausible inference" was that Young "sought to assure Spencer of IRUS's continued commitment" to the merger transaction and the Development Companies, not to make "detailed and specific statements as to IRUS's corporate structure" or the triggering of the milestones. *Id.* at 484-85. As for the April 22, 2020 organizational chart, the parties disputed

7

the context in which it was sent and whether its depictions of IRUS's organizational structure post-Asset Swap were misleading. Again, the Court rendered a factual determination only after hearing (and crediting) Mr. Casey's trial testimony on the matter, that is, "that he understood Trireme's request to be seeking information about IRUS's upstream corporate structure." *Id.* at 485.

Likewise, there were outstanding factual issues in advance of trial as to whether Trireme could have discovered the internal reorganization through the exercise of due diligence. Although RWE argues that filings with the Federal Energy Regulatory Commission ("FERC") and the New York Public Service Commission ("PSC") definitively disproved Trireme's concealment allegations, Br. at 13-14, RWE oversimplifies the record. In fact, there was "conflicting information about the Development Companies' ownership in public filings," *Trireme II*, 757 F. Supp. 3d at 482, including a FERC filing representing that one of the Development Companies would continue to be an indirect subsidiary of IRUS even after the Asset Swap, *id.* at 468, 482. Only after a fulsome presentation of all the evidence at trial did the Court find that, "given the totality of the public filed information and discovery produced to Plaintiffs in *Trireme I*, Plaintiffs had at least 'sufficient information' to give rise to a 'duty of further investigation' for purposes of *res judicata*." *Id.* at 482 (quoting *Saud v. Bank of N.Y.*, 929 F.2d 916, 921 (2d Cir. 1991)).[2]

---

[2] Trireme's opposition to RWE's motion for sanctions appends an August 15, 2019 email between Trireme and its then-outside counsel, previously withheld by RWE on privilege grounds, "to rebut any inference of sanctions." Opp. at 15 n.1; *see* Dkt. 183-1. In response, RWE argues that Trireme's disclosure of the August 15, 2019 email effected a subject-matter waiver as to "*all* privileged communications concerning potential claims under Section 7.6(c) during the same time frame," and requests that the Court order Trireme to produce "all documents as to which privilege has been waived and grant RWE an opportunity to review those materials and respond further as appropriate." Reply at 7-8. Trireme now moves to strike two paragraphs from RWE's Rule 11 reply brief, namely, paragraphs asserting (1) that

Nor is the fact that Trireme's allegations were ultimately disproven and rejected at trial a basis for imposing sanctions. Indeed, "Rule 11 sanctions are not warranted where the evidentiary support is merely weak and the claim is unlikely to prevail." *Thompson v. City of New York*, No. 21-cv-08202 (JLR), 2024 WL 1216534, at *12 (S.D.N.Y. Mar. 21, 2024) (quoting *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 427 (S.D.N.Y. 2016)), *aff'd*, No. 24-1051, 2024 WL 4586530 (2d Cir. Oct. 28, 2024) (summary order). That Trireme ultimately did not prevail on its concealment allegations is far from sanctionable conduct, and for the reasons cited above, RWE cannot show that Trireme's concealment claims were "utterly lacking in support." RWE's concealment of the internal reorganization was at least a "reasonable inferenc[e]" from the evidence produced in discovery, *Kiobel v. Millson*, 592 F.3d 78, 82 (2d Cir. 2010), even if it was an inference that was subsequently disproven at trial. *See also K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995) ("Sanctions should only be imposed if 'is it patently clear that a claim has absolutely no chance of success,' and all doubts should be resolved in

---

the August 15, 2019 email demonstrates "bad faith" by Trireme and (2) seeking production of all documents as to which privilege has been waived. Dkt. 191 at 1.

The Court does not rely on the August 15, 2019 email and therefore does not entertain RWE's request for an order compelling production. The Court also finds no basis for granting Trireme's motion to strike. "Motions to strike are generally disfavored, and should be granted only when there is a strong reason for doing so." *Kumaran v. Northland Energy Trading, LLC*, 762 F. Supp. 3d 322, 330 (S.D.N.Y. 2025) (quoting *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 357 (E.D.N.Y. 2008)). No such reason is presented here. The Court is fully capable of identifying any portions of RWE's motion that are improper and disregarding them. *See Schneidermesser v. NYU Grossman Sch. of Med.*, No. 21-cv-07179 (DEH), 2024 WL 4054372, at *2 (S.D.N.Y. Sept. 5, 2024) (denying motion to strike portions of declaration given that the court was "capable of reading the challenged declaration, identifying any portions of it that are improper or lack evidentiary value, and disregarding any such portions" (alterations adopted) (quoting *N.Y. State Vegetable Growers Ass'n v. James*, No. 23-cv-01044, 2024 WL 665978, at *1 (W.D.N.Y. Feb. 16, 2024))).

favor of the signing attorney." (quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993)).[3]

RWE's citation to *Galin v. Hamada*, 283 F. Supp. 3d 189, is misplaced. There, discovery "yielded no admissible evidence whatsoever" for the plaintiff's claims. *Id.* at 202. Furthermore, the plaintiff testified in his deposition that he had nothing more than a "gut feeling" to support his allegations. *Id.* at 203 (citation omitted). In imposing sanctions, the court notably stated that the plaintiff "ha[d] never once, in any manner, produced an admissible piece of evidence [to support his claims]." *Id.* That the Court here ultimately credited Defendants' evidence over Plaintiffs' is not akin to Plaintiffs having "no admissible evidence whatsoever."[4]

---

[3] Since the Court finds that RWE has not sufficiently alleged that Trireme's concealment allegations were "utterly lacking" in support such that sanctions are warranted, the Court need not decide whether a heightened standard, such as "actual knowledge," applies here. The Court likewise need not reach Trireme's arguments about the purported procedural deficiencies in RWE's notice of Rule 11 sanctions. *See* Opp. at 15-16.

[4] RWE's other cited authorities are likewise readily distinguishable. *See, e.g.*, *Cameau v. Nat'l Recovery Agency, Inc.*, No. 15-cv-02861 (DRH) (AKT), 2018 WL 4522104, at *8 (E.D.N.Y. Aug. 6, 2018) (sanctioning the plaintiff where "there was *no* evidence to support [the plaintiff's claims]" (emphasis added)), *report and recommendation adopted*, 2018 WL 4853050 (E.D.N.Y. Sept. 28, 2018); *Int'l Techs. Mktg., Inc. v. Cognyte Techs. Isr. Ltd.*, No. 15-cv-02457 (GHW), 2022 WL 11280876, at *7 (S.D.N.Y. Oct. 19, 2022) (similar); *Ke v. J R Sushi 2 Inc.*, No. 19-cv-07332 (PAE) (BCM), 2022 WL 912231, at *9 (S.D.N.Y. Mar. 28, 2022) (sanctioning the plaintiff's attorneys where the claims "lacked *any* evidentiary support." (emphasis added)); *Klein v. Aicher*, No. 19-cv-09172 (RA), 2020 WL 4194823, at *11-12 (S.D.N.Y. July 21, 2020) (sanctioning the plaintiff where the evidence conclusively contradicted his claims); *Paese v. N.Y. Seven-Up Bottling Co.*, 158 F.R.D. 34, 37-38 (S.D.N.Y. 1994) (sanctioning the plaintiff's attorney where there was a complete failure of proof at trial).

## CONCLUSION

For the foregoing reasons, RWE's motion for Rule 11 sanctions is DENIED. The Clerk of Court is respectfully directed to terminate the motions at Dkts. 173, 181, and 191.

Dated: June 27, 2025
       New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge